Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Tel: (917) 471-1894
Fax: (310) 496-3176
astraus@milberg.com

*Attorneys for Plaintiff and the Proposed Class*
*Additional attorneys on signature page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| EDWARD HEYMER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,<br><br>Defendant. | Case No. 5:22-cv-2085<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Edward Heymer ("Plaintiff"), acting on behalf of himself and all other similarly situated persons ("Class Members"), brings this action for damages and equitable relief against Harley-Davidson Motor Company Group, LLC ("Harley-Davidson" or "Defendant").

## INTRODUCTION

1.     This is a consumer class action brought against Defendant for using its 24-month, standard manufacturer's limited warranty ("Limited Warranty") on the sale of new motorcycles to force Harley-Davidson owners to use genuine Harley-Davidson replacement parts and accessories rather than non-Harley-Davidson aftermarket parts and accessories available for its motorcycles, as well as Harley-Davidson authorized dealerships to service their motorcycles.

2.     Harley-Davidson was founded in 1903 and over the last century has become one of the most recognized names in the motorcycle industry. By 1920, Harley-Davidson was the largest motorcycle manufacturer in the world. Along with Indian Motorcycle Inc. ("Indian"), Harley-Davidson is one of only two American motorcycle brands that survived the Great Depression.

3.     Due to the longevity and popularity of its motorcycles, and because of customers' willingness to customize and/or keep older Harley-Davidsons on the road for many years, there is a vast and robust aftermarket for parts and accessories to repair and customize Harley-Davidson motorcycles.

4.     The third-party aftermarket for Harley-Davidson compatible parts and accessories became a threat to Harley-Davidson's bottom line, specifically to its parts and accessories sales which are "important pillars of the Company's future success as a global lifestyle brand."[1]

5.     In 2021, Harley-Davidson's parts and accessories segment, which is defined as "Genuine Motor Parts and Genuine Motor Accessories" including "replacement parts" and "mechanical and cosmetic accessories," accounted for

---

[1] Harley-Davidson, Inc. Annual Report (Form 10-K) (Dec. 31, 2021) at 4. *See also id.* at 6, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000793952/e4e5c0c7-000b-4c20-b085-1b0742f42648.pdf

over 16% of Defendant's total revenue,[2] equating to over $740 million in revenue generated from that segment.[3]

6.      In order to maximize its "higher-margin parts and accessories"[4] revenue and profit, Harley-Davidson used its Limited Warranty to suppress competition from aftermarket parts and accessories competitors, forcing Harley-Davidson motorcycle owners under warranty to use only Harley-Davidson's own parts, accessories and authorized services.

7.      Harley-Davidson's use of its Limited Warranty in this manner violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA"), the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.* and accompanying regulations, as charged by the Federal Trade Commission ("FTC"), which Harley-Davidson admitted in its acceptance of the consent decree it entered with the FTC in October 2022.[5]

8.      The FTC's consent decree with Harley-Davidson obtained injunctive relief to prohibit some of Harley-Davidson's illegal business practices. The FTC, however, lacks the authority to recover consumer damages. Plaintiff and Class Members seek to recover those damages – overpayment for Harley-Davidson replacement parts, accessories and services during the course of their Limited Warranty.

_____

[2] *Id.* at 5.

[3] *Id.* at 30.

[4] *Id.* at 26.

[5] Agreement Containing Consent Order, *In re Harley-Davidson Motor Co. Grp., LLC,* Federal Trade Commission https://www.ftc.gov/system/files/ftc_gov/pdf/2123140HarleyDavidsonACCO.pdf (last visited Nov. 22, 2022).

9.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

10.    Defendant has sufficient minimum contacts with California to be subject to this Court's personal jurisdiction. Defendant intentionally availed itself of the markets within this District and this state through the promotion, sale, marketing, and distribution of its motorcycles, replacement parts, accessories and services, which renders this Court's exercise of jurisdiction necessary and proper. Indeed, the location where Plaintiff purchased his Harley-Davidson motorcycle and Harley-Davidson parts is the largest Harley-Davidson dealership in the United States by sales volume.[6] Defendant has been registered to do business in California since 1992. In addition, Defendant maintains at least 38 authorized Harley-Davidson dealerships in California.[7]

11.    Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District and purchased his motorcycle, as well as Harley-Davidson parts and services, at Riverside Harley-Davidson in Riverside, California.

---

[6] *Riverside Harley-Davidson No. 1 new sales volume dealership for 2020,* RIVERSIDE HARLEY-DAVIDSON, https://www.riversideharley.com/about-us/worldwide/ (last visited Nov. 22, 2022).

[7] *Find a H-D Dealer,* HARLEY DAVIDSON, https://www.harley-davidson.com/us/en/tools/find-a-dealer.html?type=1&name=California%2C+USA&lat=36.778261&lng=-119.4179324&locale=en_US&programCode= (last visited Nov. 22, 2022).

**PARTIES**

12.     Plaintiff Edward Heymer is a citizen of California residing in Murrieta, Riverside County. Mr. Heymer purchased his 2019 Harley-Davidson Iron 883 in or about March 2019, for approximately $16,000.00, from Riverside Harley-Davidson located in Riverside, California. Mr. Heymer also purchased Harley-Davidson genuine replacement parts and services on January 16, 2021 from Riverside Harley-Davidson for his motorcycle while under the Limited Warranty.

13.     Defendant Harley-Davidson Motor Company Group, LLC is the principal operating subsidiary of Harley-Davidson, Inc., a manufacturer and distributor of motorcycles, parts, accessories and other products to consumers. It is based in and organized under the laws of Wisconsin. Its sole ultimate shareholder, Harley-Davidson, Inc., is based in Milwaukee, Wisconsin, and incorporated in Wisconsin.

**FACTUAL ALLEGATIONS**

14.     This class action challenges Harley-Davidson's practice of selling motorcycles with conditional warranties that cover repairs only if the consumer has all services and repairs undertaken by an authorized Harley-Davidson dealer and uses only replacement parts and accessories from authorized Harley-Davidson manufacturers for the duration of their Limited Warranty. Authorized Harley-Davidson dealers sell warranty-related services, replacement parts and accessories at a premium compared to other motorcycle repairers. By conditioning sales of motorcycles to the requirements of their Limited Warranties, Defendant is able to extract higher-than-usual profits from the repair businesses. For this reason, tying sales to the use of a specific repair service or the use of authorized parts and/or accessories in this manner violates state and federal law, including the MMWA.

15. Defendant's practice also prevents Harley-Davidson customers, including Plaintiff, from undertaking routine maintenance and minor repairs on their own, instead of going to a Harley-Davidson authorized dealer, for fear that such maintenance will void the Limited Warranty.

16. Defendant exacerbates state and federal violations by failing to comply with the MMWA's requirement to provide consumers with access to any written warranty prior to the point of sale. *See* 15 U.S.C. § 2302(b). Warrantors must provide sellers with materials to make the terms of a product's written warranty "readily available for examination by the prospective buyer" as federal law requires for any product with a written warranty that costs more than $15.00. 16 C.F.R. § 702.3(b). Defendant unlawfully fails to require its dealers to disclose the written warranty terms to Plaintiff and Class Members prior to the point of sale and fails to disclose material terms of the Limited Warranty including the requirement to use Harley-Davidson specified dealers, parts and accessories.

17. Finally, Defendant unlawfully fails to comply with the MMWA's requirement as to full and conspicuous disclosure of the terms and conditions of its Limited Warranty "to the extent required by rules of the [FTC.]" *See* 15 U.S.C. § 2302(a). The FTC Act further requires that a warranty "shall clearly and conspicuously disclose in a single document in simple and readily understood language . . . (2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2). Harley-Davidson's Limited Warranty does not include the full terms of the warranty; instead, it instructs consumers to consult with a Harley-Davidson dealer for full details.

## The FTC Investigation

18.     In May 2021, the FTC released a report titled, "Nixing the Fix: an FTC Report to Congress on Repair Restrictions," condemning manufacturers that restrict consumers from choosing how they repair products.[8]

19.     On July 9, 2021, President Biden signed an Executive Order promoting competition in the U.S. economy.[9] The Order includes a specific directive to the FTC to pursue "Right-To-Repair" issues.[10]

20.     In July 2021, the FTC unanimously adopted a policy statement to prioritize enforcement of repair restrictions.[11] As the FTC has explained, "[t]hese types of restrictions can significantly raise costs for consumers, stifle innovation, close

---

[8] *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, Federal Trade Commission (May 2021) https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf

[9] *Executive Order on Promoting Competition in the American Economy,* THE WHITE HOUSE (July 9, 2021) https://www.whitehouse.gov/briefing-room/presidential-actions/2021/07/09/executive-order-on-promoting-competition-in-the-american-economy/

[10] "To address persistent and recurrent practices that inhibit competition, the Chair of the FTC, in the Chair's discretion, is also encouraged to consider working with the rest of the Commission to exercise the FTC's statutory rulemaking authority, as appropriate and consistent with applicable law, in areas such as: . . . (ii) unfair anticompetitive restrictions on third-party repair or self-repair of items, such as the restrictions imposed by powerful manufacturers that prevent farmers from repairing their own equipment" *Id.*

[11] Press Release: *FTC to Ramp Up Law Enforcement Against Illegal Repair Restrictions*, FEDERAL TRADE COMMISSION (July 21, 2021) https://www.ftc.gov/news-events/news/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions

off business opportunity for independent repair shops, . . . delay timely repairs, and undermine resiliency."[12]

21.     Shortly thereafter, the FTC filed a complaint against Defendant alleging that Harley-Davidson unlawfully conditioned its written warranties to consumers on the use of Harley-Davidson branded parts and accessories and Harley-Davidson authorized services and failed to properly disclose all terms of its Limited Warranty in a single document to the consumer. The FTC alleged that these terms harm consumers and competition.[13]

22.     On June 22, 2022, the FTC announced the settlement of the action against Harley-Davidson.[14] On October 21, 2022, the FTC issued a final order with consent decree regarding the case brought against Harley-Davidson.[15]

---

[12] *Id.*

[13] Complaint, *In re Harley- Davidson Motor Co. Grp., LLC*, No. 2123140, FEDERAL TRADE COMMISSION (June 23, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/2123140HarleyDavidsonComplaint.pdf; *see also* Harley-Davidson Motor Company, FEDERAL TRADE COMMISSION https://www.ftc.gov/legal-library/browse/cases-proceedings/212-3140-harley-davidson-motor-company

[14] *Statement of Chair Lina M. Khan Joined by Commissioner Rebecca Kelly Slaughter In the Matter of Harley-Davidson Motor Company Group, LLC and MWE Investments, LLC Commission*, File Nos. 2123140, 2223012, FEDERAL TRADE COMMISSION (June 22, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/2223012_2123140HarleyMWEChairStatement.pdf

[15] Complaint, Decision, and Order, FEDERAL TRADE COMMISSION (Oct. 21, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/2123140-Harley-Davidson-combined-package-without-signatures.pdf; *see also supra* n.5.

**Restrictions Associated with Harley-Davidson's Limited Warranty**

23.    Harley-Davidson has been selling motorcycles for more than a century and has a strong reputation among consumers for being a well-made, American, luxury motorcycle. Harley-Davidson motorcycles are generally more expensive than competitors, in large part because of the reputation that the company has built over time. To many Harley-Davidson customers there are no close substitute products in the market.

24.    Harley-Davidson sells motorcycles with a 24-month, standard manufacturer's warranty, as defined in the MMWA, 15 U.S.C. § 2301(6)(B).

25.    Harley-Davidson's Limited Warranty, which is summarized in the motorcycle owners' manual, is valid for twenty-four months, "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle."[16]

26.    The Limited Warranty, under the heading "Keeping it all Harley-Davidson" states in pertinent part:

> Use only Harley-Davidson approved parts and accessories that have been designed, tested and approved for your model and model year motorcycle . . . . Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement

---

[16] *See, e.g.*, 2019 Harley-Davidson Owner's Manual: Sportster Models, Warranties and Responsibilities ▸ Limited Motorcycle Warranty, H-D SERVICE INFORMATION PORTAL https://serviceinfo.harley-davidson.com/sip/content/document/view?id=1465741510034236679&groupId=16 (last visited Nov. 23, 2022)

parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact.[17]

27.     The Limited Warranty does not include free replacement of all parts and accessories. Harley-Davidson charges a significant premium for the purchase of authorized parts and accessories, and many Harley-Davidson dealers also charge premiums for labor associated with replacing parts and adding accessories.

28.     Harley-Davidson's Limited Warranty additionally provides that the "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details" and, under the heading "Service Records," that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."[18]

## Violations of the Magnuson-Moss Warranty Act

29.     The restrictions embodied in Harley-Davidson's Limited Warranty violates the MMWA (15 U.S.C. §§ 2301, *et seq.*) which regulates consumer warranties and the procedures used to resolve warranty disputes. It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

30.     The MMWA prohibits a warrantor from conditioning a warranty for a consumer product that costs more than $5.00 on the consumer's use of an article or a service (other than an article or a service provided without charge) which is identified

---

[17] *See, e.g.*, 2019 Harley-Davidson Owner's Manual: Sportster Models, Warranties and Responsibilities ▶ Limited Motorcycle Warranty, H-D SERVICE INFORMATION PORTAL https://serviceinfo.harley-davidson.com/sip/content/document/view?id=1465741510034236679&groupId=16 (last visited Nov. 23, 2022)

[18] *Id.*

by brand, trade, or corporate name, unless the warrantor applies for and receives a waiver from the Commission. 15 U.S.C. § 2302(c); *see also* 16 C.F.R. § 700.10.

31.     An FTC Rule interpreting this provision specifically bars warranty language used by Harley-Davidson:

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

32.     In addition, the MMWA provides that the Commission shall prescribe rules regarding the terms of a warranty to be made available to the consumer prior to the sale of the product. *See* 15 U.S.C. § 2302(b). Under the FTC Act's Pre-Sale Availability Rule, warrantors are required to provide sellers with all materials necessary to comply with the Pre-Sale Availability Rule which states that the seller "shall make a text of the warranty readily available for examination by the prospective buyer by: (1) Displaying it in close proximity to the warranted product . . . or (2) . . . placing signs reasonably calculated to elicit the prospective buyer's attention in

prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request." 16 C.F.R. § 702.3(b).

33. Harley-Davidson violates this regulation because it does not provide its authorized dealers with signs displaying the text of the Limited Warranty, or otherwise require its dealers to make the Limited Warranty terms available to all customers before purchase.

34. The MMWA also lays out the requirements to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty" as required by the FTC. *See* 15 U.S.C. §2302(a). The FTC Act's corollary regulation further defines the Rule Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, 16 C.F.R. § 701 ("the Disclosure Rule"), stating that, a warranty must disclose, clearly and conspicuously in a single document and in simple and readily understood language "[a] clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2).

35. Harley-Davidson violates this regulation because it conceals the full terms of the Limited Warranty and instead instructs consumers to consult with a Harley-Davidson dealer for full details. In particular, the Limited Warranty states that "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."[19]

---

[19] *Id*.

36.     In or about March 2019, Plaintiff purchased a new 2019 Harley-Davidson Iron 833 motorcycle for approximately $16,000.00, from Riverside Harley-Davidson in Riverside, California. This motorcycle came with a standard 24-month Harley-Davidson Limited Warranty.

37.     On or about January 16, 2021, Plaintiff brought his 2019 Harley-Davidson Iron 883 motorcycle in for service at Riverside Harley-Davidson, including the purchase of parts necessary for an oil change and brake fluid flush. At this time, he was told by Harley-Davidson that to maintain the two-year warranty coverage, he had to purchase Harley-Davidson-branded parts rather than aftermarket parts manufactured by a competitor and had to have any servicing done at a Harley-Davidson dealer, or he would lose the warranty coverage. Accordingly, he paid above-market prices for parts and servicing during the Limited Warranty period.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on behalf of himself and the members of the following class (the "Class"):

> All natural persons who purchased a Harley-Davidson motorcycle in the United States covered by a Harley-Davidson Limited Warranty, and who purchased Harley-Davidson replacement parts and/or accessories, and/or paid for servicing by an authorized Harley-Davidson dealer for their motorcycle during the two-year Limited Warranty period. Purchases for the purpose of resale are excluded from the Class definition.

39.     Plaintiff also brings this action on behalf of a California Subclass consisting of all natural persons who purchased a Harley-Davidson motorcycle in California.

40.     Plaintiff reserves the right to amend the Class definition as necessary.

41. As used herein, "Class Members" shall mean and refer to the members of the Class, including Plaintiff.

42. <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. Harley-Davidson has sold between 100,000 and 150,000 new motorcycles in the United States in recent years. The disposition of the claims of these Class and Subclass Members in a single action will provide substantial benefits to all parties and to the Court.

43. <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased a Harley-Davidson motorcycle with a Harley-Davidson Limited Warranty, and because of the terms of the Limited Warranty, was forced to limit purchases of replacement parts, accessories and servicing to dealers authorized by Harley-Davidson.

44. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

   a) Whether Harley-Davidson motorcycle warranties required customers to use only genuine Harley-Davidson replacement parts and/or accessories, and required that all repairs be done at authorized dealers;

   b) Whether Harley-Davidson failed to require its dealers to make complete terms of all warranties easily available to customers before purchase, as required by the MMWA;

   c) Whether Harley-Davidson's restrictive warranty practices increased its profits by causing Class Members to purchase its replacement parts and/or accessories rather than lower cost alternatives;

1

2

3

4

5

6

7

8

9

d)  Whether Defendant was unjustly enriched by making the representations and omissions above;

e)  Whether Defendant's actions as described above violated the MMWA;

f)  Whether Defendant's actions as described above violated California consumer protection laws as alleged herein;

g)  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

45.    Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of consumer class actions and Plaintiff intends to prosecute this action vigorously.

46.    Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

47. Further, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

### Notice of Claims to Harley-Davidson
### Would be Futile and is Therefore Excused

48. As to any claims where Notice to Harley-Davidson may be required, Notice is excused as futile. Defendant has been put on notice of the legal issues associated with its Limited Warranties by prosecution by the FTC and by numerous private actions brought by Harley-Davidson customers but has not offered restitution or any other remedy to its customers who were adversely affected in the past by having paid greater than market prices for branded replacement parts, accessories and/or servicing during warranty periods.

### COUNT I
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

49. Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein, as well as the allegations as to the breach of implied warranty of merchantability as set forth in Count III below.

50. As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiff's MMWA claim.

51. Harley-Davidson motorcycles are consumer products as defined in 15 U.S.C. § 2301(1).

52. Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3) and utilized for personal and household use and not for resale or commercial purposes.

53.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

54.     Each purchase of Defendant's motorcycles included a "written warranty," as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

55.     By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

56.     In violation of the anti-tying provision of the MMWA, 15 U.S.C. § 2302(c), and associated regulations, 16 C.F.R. § 700.10, Defendant conditioned its Limited Warranty on the consumer's use of its own branded replacement parts and accessories.

57.     In violation of the Pre-Sale Availability Rule, MMWA, 15 U.S.C. § 2302(b), and associated regulations, 16 C.F.R. § 702.3(b), Defendant failed to ensure that all terms of the Limited Warranties were available to customers before their purchases.

58.     In violation of the Disclosure Rule, MMWA, 15 U.S.C. §2302(a), and associated regulations, 16 C.F.R. § 701.3(a)(2), Defendant failed to make all terms of its warranties available to its customers in a single, plain language document.

59.     As a result of Defendant's breach of warranty, Plaintiff and the Class Members are entitled to obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## COUNT II
## SONG-BEVERLY CONSUMER WARRANTY ACT
### (Cal. Civ. Code § 1791, *et seq.*)

60.     Plaintiff brings this count on behalf of himself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

61.     Harley-Davidson motorcycles are "consumer goods" as defined by Cal. Civ. Code § 1791(a).

62.     Defendant is a "manufacturer" and "distributor" as defined by Cal. Civ. Code § 1791(e) and (j).

63.     Cal. Civil Code § 1793.1(a)(1) states that "Every manufacturer, distributor, or retailer making express warranties with respect to consumer goods shall fully set forth those warranties in simple and readily understood language, which shall clearly identify the party making the express warranties, and which shall conform to the federal standards for disclosure of warranty terms and conditions set forth in the federal Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (15 U.S.C. Sec. 2301, *et seq.*), and in the regulations of the Federal Trade Commission adopted pursuant to the provisions of that act."

64.     As set forth above, Defendant violates the Song-Beverly Consumer Warranty Act through the same warranty practices that violate the Magnuson-Moss Act and related regulations.

65.     Defendant's conduct caused Plaintiff, and other California Subclass Members, to pay for Harley-Davidson authorized services, parts and accessories that they would not have paid, or, at a minimum, would have paid less for, had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts and accessories.

66. As a direct and proximate result of Defendant's breach of its duties, Plaintiff and California Subclass Members received goods in a condition that substantially impairs their value. Plaintiff and California Subclass Members have been damaged in that their motorcycles require actual and potential increased maintenance and repair costs. Defendant's conduct caused Plaintiff and other Subclass Members to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts and accessories.

67. Plaintiff and the California Subclass Members have met all of their obligations under the Limited Warranty, or otherwise have been excused from performance of such obligations, as a result of Defendant's conduct.

68. Plaintiff and California Subclass Members are entitled to damages and other legal and equitable relief, including the amount of overpayment for their motorcycles, and overpayment of costs of parts, accessories and repairs, pursuant to Cal. Civ. Code § 1794.

### COUNT III
### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")
### (Cal. Civ. Code § 1750, *et seq.*)

69. Plaintiff brings this count on behalf of himself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

70. The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

71. Plaintiff and the California Subclass members are "consumers" as defined in California Civil Code § 1761(d).

72.    The Products are "goods" as defined in California Civil Code § 1761(a).

73.    Defendant is a "person" as defined in California Civil Code § 1761(c).

74.    Plaintiff's and the California Subclass Members' purchases of the Products are "transactions" as defined in California Civil Code § 1761(e).

75.    Defendant's misleading representations and omissions were designed to, and did, induce the purchase of motorcycles for personal, family, or household purposes by Plaintiff and California Subclass members, and violated and continue to violate the following sections of the CLRA:

    a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised;

    d.    § 1770(a)(14): representing that a transaction confers or involves rights, remedies, or obligations that it does not involve; and

    e.    § 1770(a)(15): representing that a repair service is needed when it is not.

76.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

77.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

78.    Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each California Subclass member.

79.    Pursuant to California Civil Code § 1780, Plaintiff seeks damages, restitution, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**COUNT IV**
**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

80. Plaintiff brings this count on behalf of himself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

81. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

82. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful and unfair business practices in that they have the capacity to cause consumers to pay more for replacement parts and accessories and servicing of motorcycles than they would have paid if Harley-Davidson had not used unlawful warranty terms and practices to prevent customers from choosing replacement parts and servicing from competitors.

83. <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL in that they violate at least: (a) the MMWA; (b) the Song-Berly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*; and (c) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

84. <u>Unfair</u>: Defendant's conduct with respect to its warranties was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims, including Plaintiff and the California Subclass.

a. Defendant's conduct with respect to warranties was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the

applicable sections of the MMWA and the Song-Beverly Consumer Warranty Act.

b. Defendant's conduct with respect to warranties was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

85. Plaintiff and the California Subclass seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition. Plaintiff and the Class have no adequate remedy at law.

## COUNT V
## UNJUST ENRICHMENT

86. Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

87. Plaintiff conferred benefits on Defendant by purchasing Harley-Davidson motorcycles and branded Harley-Davidson replacement parts and accessories during his Limited Warranty period.

88. Defendant has knowledge of receipt of such benefits.

89. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of motorcycles and replacement parts, accessories and services.

90. Defendant has injured Plaintiff and Class Members because they would not have paid a price premium for replacement parts, accessories and services during its Limited Warranty periods if not for Defendant's warranty policies.

7. Because it is unjust and inequitable for Defendant to retain such non-gratuitous benefits conferred on it by Plaintiff and Class Members, Defendant must

pay restitution to Plaintiff and Class Members, as ordered by the Court. Plaintiff and the Class have no adequate remedy at law.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of the Class of all others similarly situated, seeks a judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class representative and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs incurred in bringing and prosecuting this lawsuit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 23, 2022

Dated: November 23, 2022                    Respectfully submitted,

/s/ Alex R. Straus
Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel: (917) 471-1894
Fax: (310) 496-3176
astraus@milberg.com

Peggy J. Wedgworth*
Elizabeth McKenna*
Michael A. Acciavatti*†
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com
macciavatti@milberg.com

Arthur Stock*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (866) 252-0878
Fax: (865) 522-0049
astock@milberg.com

*Attorneys for Plaintiff and the Proposed Class*

*\*Applications for pro hac vice to follow*
*† Admitted in Pennsylvania only*